# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ROBERT COOPER, #209556 | * | |
| Plaintiff | * | |
| v | * | Civil Action Case No. JFM-10-3108 |
| BOBBY SHEARIN<br>J. WILSON, Captain<br>JOHN DOE | *<br><br>* | |
| Defendants | * | |

***

## MEMORANDUM

Pending is Robert Cooper's ("Cooper") prisoner civil rights complaint pursuant to 42 U.S.C. § 1983.  Defendants Warden Bobby P. Shearin and Captain John Wilson, through counsel, have filed a Motion to Dismiss or, in the Alternative, for Summary Judgment with verified exhibits.  ECF No. 10. Cooper was notified of defendants' dispositive motion and his opportunity to file a reply, s*ee Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam).  No reply was filed. The case is ripe for disposition, and the court now rules pursuant to Local Rule 105.6 (D. Md. 2011),  no hearing being deemed necessary.  For reasons to follow, defendants' motion for summary judgment will be granted.

## I.    BACKGROUND

Cooper, an inmate at the North Branch Correctional Institution ("NBCI"), alleges that he was placed on administrative segregation on January 3, 2009, pending investigation after an unknown inmate, "inmate John Doe,"[1] told prison staff that Cooper intended to harm Correctional Officer V. Whiteman.   ECF Nos. 1 and 3, Complaint and Supplement.  After

---

[1]   Cooper also names inmate "John Doe" as a defendant.  A civil rights complaint under § 1983 may only lie against those acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).  Cooper does not allege that inmate Doe's actions were in any manner attributable to the state.  Therefore, Cooper may not maintain a § 1983 action against inmate John Doe.

investigation found the claim unsubstantiated, Cooper was returned to the general prison population on February 26, 2009.  *See id.* Cooper alleges that defendants violated his due process rights by denying him an investigation into the allegations within 120 hours in accordance with Division of Correction (DOC) rule and regulations which provide that DOC staff cannot delegate inmate supervision to other inmates.  *Id*.  Additionally, Cooper alleges that he was denied the right to confront his accuser, and his right to earn good conduct credits (GCC), work credits, and pay.  Cooper maintains that by being on administrative segregation status, he was denied basic human needs such as medical care, exercise, and library services.

Plaintiff states that he exhausted his administrative remedies, but was denied procedural due process by the Inmate Grievance Office (IGO), and the Circuit Court for Allegany County. *See id*.  For relief, he demands monetary and punitive damages, and also requests the full name of inmate "John Doe" for "court purposes."  *Id*.

## II.    FACTS

Cooper was placed on administrative segregation status on January 3, 2009, pending investigation into whether he was a danger to the security of the institution and/or staff. Exhibit No. 2,  pp. 1-4, Declaration of Captain John Wilson 2 February 8, 2011, with Notice of Assignment to Administrative Segregation dated January 3, 2009, Administrative Segregation Investigative Report dated January 4, 2009, Case Management Assignment Sheet dated January 6, 2009, Administrative Segregation Investigative Report dated February 17, 2009, and Case Management Assignment Sheet dated February 19, 2009. No credible evidence was developed during the course of the investigation that required continuing Cooper on administrative segregation status.  On February 26, 2009, plaintiff was returned to general population.  *See id*.

2

pp. 1 and 6; *see also*, Exhibit No. 1, pp. 3-4

## III.   STANDARD OF REVIEW

### A.  Summary Judgment

Rule 56(a) & (c) of the Federal Rules of Civil Procedure provides:

> A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.
>
> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

This does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

The party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  Once the moving party has met that burden, the non-moving party must come forward and demonstrate that such an issue does, in fact, exist. *See Matsushita Elec. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).*  "The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but

rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)); *see also Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir. 1988).

The court generally must view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Scott v. Harris,* 550 U.S. 372, 376-77 (2007). However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Id.* p. 380.

## IV.   DISCUSSION

### A.  Claims against Warden Shearin

Warden Shearin is not alleged to have been personally involved in the matters at issue; thus, there is no legal basis to hold him culpable in this case under principles of supervisory liability.  Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.1994).  Absent any allegation or facts to support actual or constructive knowledge of the matter at issue, there are no grounds for assigning supervisory liability against Warden Shearin.  Moreover, even were the

claims against Warden Shearin not dismissible, he would be entitled to judgment for reasons that follow.

### B.  Administrative Claims

Segregation is not per se cruel and unusual punishment.  *See In Re Five Percenters*, 174 F.3d 464, 471-72 (4th Cir. 1999); *Allgood v. Morris*, 724 F.2d 1098, 1101 (4th Cir. 1984) (segregated protective custody); *Ross v. Reed,* 719 F.2d 689, 697 (4th Cir. 1983) (administrative segregation).   To prevail on a due process claim, an inmate must first demonstrate deprivation of life, liberty, or property by governmental action.  *See Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir.1997).  To the extent Cooper alleges that his assignment to administrative segregation pending investigation abridged his right to due process, segregated confinement generally does not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest. *See Sandin v. Connor*, 515 U.S. 472, 486 (1995).

The Fourth Circuit has held that "changes in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and] are contemplated by his original sentence to prison ...." *Gaston v. Taylor,* 946 F.2d 340, 343 (4th Cir. 1991). Generally, prisoners do not have a constitutionally recognized liberty interest in a particular security classification or prison placement. *See Hewitt v. Helms*, 459 U.S. 460, 468 (1983) (no constitutional right under the Due Process Clause to a particular security classification or prison placement). An inmate does not have a constitutional right to be confined in a particular location. *See Olim v. Wakinekona*, 461 U.S. 238 (1983); *Meachum v. Fano*, 427 U.S. 215(1976).   In his complaint, Cooper does not allege facts suggesting that his assignment to administrative

segregation amounted to atypical hardship contemplated by *Sandin* or *Beverati*; therefore, his claim does not implicate a liberty interest or give rise to a due process claim**.**

Cooper's bald allegation that he was denied "basic human needs" such as medical care, exercise, and library services while on administrative segregation is refuted by defendants' exhibits.  Inmates on administrative segregation have exercise periods, showers, and receive their meals in their cells.  Exhibit 3, p 6 NBCI Inmate Handbook (2008) and Exhibit 4, pp. 6-7, NBCI Inmate Handbook (2009).   Cooper fails to show how the conditions on segregation status were significantly more onerous than in general population to show atypical hardship.

Additionally, Cooper neither alleges nor provides facts to show prison officials deliberately filed false information against him.  In any event, an inmate has no constitutional right to be free from being falsely or wrongly accused of conduct.  To the extent Cooper intends to complain that he was placed on administrative segregation based on information later determined to be unsubstantiated, he fails to state a claim under § 1983.  *See Freeman v. Rideout,* 808 F.2d 949, 952-53 (2d Cir.1986) (holding that "the mere filing of [a false] charge itself does not" constitute a cognizable claim under § 1983 so long as the inmate "was granted a hearing, and had the opportunity to rebut the unfounded or false charges" where a protected liberty interest is at stake).  There is no suggestion that the report was filed in retaliation for the exercise of a constitutional right.  *See McIntosh v. Freeman*, 66 F.3d 316 (4th Cir.1995) (unpublished). Consequently, these allegations are insufficient to support a claim of constitutional violation, and summary judgment in favor of defendants is appropriate.

### C.  Violation of Prison Policies, Rules and Regulations Claim

Cooper next alleges that defendants violated his due process rights by denying him an

adequate investigation within 120 hours pursuant to DOC's policies and procedures. Complaint and Supplement.   Plaintiff also contends that DOC rules, regulations, policies, procedures and directives state that "DOC staff cannot delegate supervision [sic] responsibilities of other inmates to another inmate."[2] The claim is without factual or legal merit.

Cooper misinterprets the 120-hour segregation hearing.  There is no requirement that the investigation be completed within 120 hours; instead, an inmate is entitled to a 120-hour review to assess whether to be continued on administrative segregation.  Exhibit No. 3 at p. 6, and Exhibit No. 4 at p. 7.   Cooper did in fact receive his 120-hour administrative segregation review within the requisite time period.  Exhibit No. 2 at p. 4.   Lastly, a violation of a prison procedural regulation does not provide a basis for a due process violation.  *See Weller v. Department of Social Services*, 901 F.2d. 387, 392 (4th Cir. 1990); *see also Riccio v. County of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990) ("[i]f the state law grants more procedural rights than the Constitution would otherwise require, a State's failure to abide that law is not a federal due process issue").   No genuine issues of fact are in dispute. Accordingly, defendants are entitled to judgment in their favor.

### D.  Conditions of Confinement Claim

Cooper alleges that he was denied "basic human needs" such as medical care, exercise, and library services on administrative segregation. The Eighth Amendment proscribes conditions that result in an unnecessary and wanton infliction of pain, including practices that are "totally without penological justification."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane

---

[2]  Plaintiff does not reference a specific directive.  In any event, there are no facts alleged to suggest that inmate supervision was delegated to any unauthorized person.

conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir.1997).  In order to state conditions of confinement claim, a prisoner must show a serious or significant mental or physical injury as a result of the challenged conditions. *See Strickler*, 989 F.2d at 1380-1381 (4th Cir. 1993).

In his complaint, Cooper does not claim to have suffered any injury as a result of the conditions alleged and presents no facts to support his otherwise conclusory allegations of deprivation.  Further, he fails to show how the conditions demonstrate the deliberate indifference by defendants.  Accordingly, defendants are entitled to summary judgment as to this claim.

### E.  Good Conduct Credit and Prison Job Claims

Cooper alleges his placement on administrative segregation resulted in denial of the right to earn good conduct credits, work credits, and back pay, after the allegations against him could not be substantiated.  Plaintiff's Complaint and Supplement. There is no constitutional right to participate in a particular in-prison program.[3]  *See, e.g., Meachum v. Fano*, 427 U.S. 215(1976); *Paoli v. Lally*, 812 F.2d 1489 (4th Cir. 1986).  An inmate is not constitutionally entitled to a prison job. *See Altizer v. Paderick*, 569 F.2d 812 (4th Cir. 1978).   Cooper fails to state a cognizable constitutional claim.

---

[3]   Cooper does not claim loss of already earned good conduct credits. In prison disciplinary proceedings where a prisoner faces the possible loss of good conduct credits he is entitled to certain due process protections. *See Wolff v. McDonnell*, 418 U.S. 539, 564-571(1974).

## V.      CONCLUSION

For these reasons, defendants are entitled to summary judgment in their favor.  A separate

order follows.


___12/15/11_____                                            /s/_____
Date                                                                              J. Frederick Motz
                                                                                  United States District Judge